UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-236-GWU

SHEILA GAIL MCKEEHAN,                                         PLAINTIFF,

VS.                         **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

    Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984); <u>Walters v. Commissioner of Social Security</u>, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

  One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-236 Sheila Gail McKeehan

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u> Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to

make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Sheila Gail McKeehan, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease and mild scoliosis.  (Tr. 11).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. McKeehan retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 12-16).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" exertion with the option of sitting or standing at 30 minute intervals, and also had the following non-exertional restrictions.  (Tr. 40).  She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally stoop, kneel, crouch, and crawl; (3) could have no exposure to vibrating or hazardous machinery; and (4) had a "limited but satisfactory" ability to deal with coworkers and the public, interact with supervisors, deal with work stress, and maintain attention and concentration.  (Tr. 40-1).  The VE responded that there were jobs that such a

person could perform and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 41).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. There is an additional issue in that the previous application had been denied in an ALJ decision dated August 9, 2005 (Tr. 58-65), and the ALJ declined to reopen the prior decision (Tr. 8). In addition, Mrs. McKeehan's Date Last Insured was September 30, 2006 (Id.), meaning that she is required to show disability existing between August 10, 2005 and September 30, 2006 in order to be entitled to benefits.

Mrs. McKeehan alleged disability essentially due to the same factors that had been described in her prior application, namely, degenerative disc disease of the lower back and leg pain. (Tr. 114). Much of the evidence submitted currently duplicates evidence submitted in the prior application, including office notes from her physician, Dr. John Michael Watts, and a functional capacity assessment from February, 2005, somewhat prior to the time period at issue, which limits her to lifting no more than ten pounds occasionally, no sitting, standing, walking, or postural activities of any kind as well as additional environmental restrictions.[1] There are

---

[1] As the court noted in its Memorandum Opinion affirming the Commissioner's denial of benefits in the prior application, this opinion by Dr. Watts was so excessive as to be incredible. McKeehan v. Astrue, London Civ. Action No. 03-137-GWU, (E.D. Ky. June 17, 2009).

also duplicates of office notes from Dr. William J. Lester and Dr. R. Ramezankhani which predate the time period at issue and which, in any case, do not contain any functional restrictions. (Tr. 166-71).

Dr. William Brooks also submitted some office notes from 2004 showing a limitation in the plaintiff's range of motion but no weakness, sensory loss, or reflex asymmetry. (Tr. 176). Dr. Brooks did not find any indication for neurological surgery. Additionally, a letter from Dr. Brooks dated March 7, 2005 is included in the current transcript; although it predates the prior administrative decision, it was not submitted to the ALJ in that case. The letter states that the plaintiff's MRI findings are "minimal," and the compression of the thecal sac present on the MRI was "minor and . . . not associated with any neurological dysfunction." (Tr. 182).

Dr. Watts submitted additional office notes, most of which indicate that the plaintiff's lower back pain was unchanged. For instance, on June 20, 2006 he noted that Mrs. McKeehan was "doing okay" and the pain in her lower back was unchanged although worse with certain unspecified activities, and she could "sit/stand/walk O.K." (Tr. 184, 218). In September, 2006, he noted that her condition was unchanged and her symptoms were "subjective." (Tr. 217). Although there was an acute flare-up of back pain in November, 2006 (Tr. 216), by March, 2007 he was again noting that she could sit, stand, and walk and her symptoms were subjective. (Tr. 214).

08-236 Sheila Gail McKeehan

Dr. Watts submitted a new residual functional capacity assessment on August 10, 2006, limiting Mrs. McKeehan to lifting less than ten pounds infrequently, standing or walking less than two hours in an eight-hour day, sitting less than 30 minutes in an eight-hour day, never pushing or pulling or performing any postural activities, and occasionally reaching, handling, fingering, and feeling. (Tr. 219-22). He listed no medical findings to support these restrictions, all of which are directly contradicted or unsupported by his office notes.

The ALJ reasonably declined to give this opinion by Dr. Watts controlling weight because it was inconsistent with objective testing, medical evidence, the opinions of other physicians, and the plaintiff's reported daily activities. (Tr. 15). While the plaintiff objects to this conclusion on appeal, the ALJ's rationale is well-supported by the evidence and adequately explained under the requirements of Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004).

Difficulty with the current decision arises from another consideration. As the ALJ noted, Acquiesence Ruling 98-4(6) and the case of Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997) provide that a subsequent administrative law judge is bound by the findings of a prior ALJ where there is a final decision in the earlier case, absent evidence of improvement or deterioration in a claimant's condition. The ALJ found that there had been no relevant change in the plaintiff's medical condition, other than psychological

08-236  Sheila Gail McKeehan

restrictions, since the final ALJ decision of August 9, 2005.  (Tr. 9).  However, the prior decision limited the plaintiff to light work and standing or walking for six hours in an eight-hour day and sitting for two hours in an eight-hour day.  (Tr. 64).[2]  Light level work may require sitting most of the time.  Social Security Ruling 83-10, p. 5.  "[A] job is in [the light] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1568(b).  The current ALJ did not place a two-hour sitting restriction on the plaintiff, or provide it to the VE.  Also, the prior decision had included the ability to sit or stand "at will" (Tr. 64), rather than at 30 minute intervals, another area that might have an effect on the VE's testimony.  Although a VE testified in the prior case that there were light and sedentary jobs which the plaintiff could perform with these restrictions, the ALJ in the present case added mental restrictions of a "limited but satisfactory" ability to deal with coworkers and the public, interact with supervisors, deal with work stresses, and maintain attention and concentration.  (Tr.

---

[2]State agency reviewer Dr. Timothy Gregg noted that the prior ALJ decision limited Mrs. McKeehan to sitting two hours in an eight-hour day and apparently intended to complete a physical residual functional capacity consistent with the 2005 decision, but the form which he was completing did not have a restriction on sitting more severe than "less than about six hours in an eight-hour work day." (Tr. 203-10).  This might have been responsible for some confusion.

11

08-236  Sheila Gail McKeehan

12).  While these limitations might not preclude all work if added to the physical restrictions in the 2005 decision, this cannot be known for certain without additional VE testimony.

The decision will be remanded for further consideration.

This the 17th day of June, 2009.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**